Thank you, Your Honor. Good morning. May it please the Court. My name is Eric Heise. I am representing the appellants in this matter, the Algzaly family. The District Court below erred by not granting a motion to amend because counsel's non-reviewability does not preclude the Court's consideration of a claim challenging DHS's final statutory inadmissibility determination. And the structure of the INA and the case law both in this circuit and in the Supreme Court regarding determination of visa applications is distinguishable from the proposed cause of action in my client's case. So just so that I'm clear about what you're arguing, you agree that the consular non-reviewability doctrine applies to the denial of visa applications? Eric Heise Yes. Do you also agree that it applies to the denial of a waiver of inadmissibility? Eric Heise Yes, under the Supreme Court case law about the discretionary denial. So your contention is that you nonetheless may challenge what action by DHS? Eric Heise The inadmissibility determination under the statute, which is different than the consular officer's discretionary grant or denial of a visa or also the discretionary grant of a waiver application. And the INA, in Trump v. Hawaii, Justice Roberts talks about the distinction between inadmissibility and visa eligibility that runs throughout the INA. And 1182A, the inadmissibility portion of the INA, it says that if you're inadmissible, you're also ineligible for a visa. And so Section 1201, which is the authority for denial of or to grant or deny visa applications, 1201G covers the consular officer's actions. And it allows a consular officer to find an applicant ineligible for a visa if the consular officer has reason to believe that they're not eligible for a visa. The next section, 1201H, provides that even if you're granted a visa, when you reach the border, you could still be found inadmissible. And it uses the term inadmissible in 1201H and it uses ineligible in 1201G. Inadmissibility determinations at the border are the purview of DHS, specifically CBP. Second to that... In this case, unless I'm mistaken, there wasn't an inadmissibility determination at the border, correct? No, there wasn't. No, there was not. Your contention is that the inadmissibility determination by the consular officer when denying the visa is the equivalent of an inadmissibility determination at the border? No. No, that's not. Because there's the next step that my clients did take in this case and also for which statutory authority exists and I think kind of explains the structure. And that's the Homeland Security Act, 6 U.S.C. 236b.1, which provides that DHS has the final authority over issues involving the issuance of... the consular officer's issuance of visas and the determination of inadmissibility. And as part of the Homeland Security Act, both, you know, DOS and DHS entered a memorandum of understanding that provides that the determination of a visa applicant's inadmissibility is DHS's to make infinality. And U.S.C.I.S., especially the Administrative Appeals Office, has exercised this authority to review the inadmissibility of a visa applicant. And these are unpublished opinions. It doesn't come up that much, but it just shows that the agency does exercise this authority. And in those cases where they find that the person was not statutory ineligible and inadmissible, they dismissed the waiver as moot, which I think is a big distinction between... they're just saying you don't need a waiver because you're not inadmissible under the statute. And that would be a determination I think is reviewable under the APA. It's not a discretionary determination. What I need your help on is the procedural history of this case. As I understand it... and I'll refer to them as the sons, the two... Yeah, that's perfectly fine. I understand there's a lot of... The two sons were denied visas by the consular officer. And in addition, at least... and they both had applications for waivers of inadmissibility denied. Yes, that is correct. What other decisions, not what the statute might provide for or what might occur in a different case, were made by which agencies in this case? So in the waiver... with the waiver decision, there becomes... there's the threshold determination. And USCIS says our records have determined you are inadmissible. Therefore, you must qualify for a waiver. And it's this first step about whether or not you even need a waiver that you can file a waiver application saying I'm just not inadmissible under the statute. A mistake was made. You have final authority over determined inadmissibility under the statutes, both INA... You've told me the statutory structure. And I suppose it is implicit in the denial of a waiver of inadmissibility that somebody's found you inadmissible. I'm just trying to... Well, they've also explicitly... Is there any record in this case of some agency finding them inadmissible? Put aside... USCIS. What's implicit? Yes, absolutely. The denials of the waivers, USCIS, which are issued by USCIS, USCIS says our records have found you inadmissible. Right? It's the first step in the process, whether or not you even need the waiver. And they make an independent determination. And they do that, and that's why they can overturn an inadmissibility determination. Also, when USCIS or DHS overturns inadmissibility in a visa application, all they do is return the visa application... Basically, they inform the consular officer in DOS that they can continue visa processing and that this person's not inadmissible under one portion of the statute, this one ground. It doesn't mean that they have to issue the visa, and it doesn't infringe upon the consular officer's otherwise discretionary capacity to denial. Let me take you through this for a second. Sure. Your argument is that USCIS made a determination of inadmissibility. Correct. Because it must have, because otherwise why would it have denied a waiver of inadmissibility? Well, I mean, it was also implicit. I mean, it was basically argued they don't need a waiver. But there's no document under which the USCIS makes a determination of inadmissibility, is there? I would say there is, which is the actual decision from USCIS. Okay, but put aside the waiver of inadmissibility. Is there a document under which they make a determination of inadmissibility? The decision as part of the waiver application, the first step. I said put that aside. Yeah. I'm asking you about the record. No reason to joust with me. Is there some other document other than the waiver of inadmissibility? Other document besides that. I can't find it in this record. I don't think so. I think that would be the only place that it would be raised to the agency that the appellants would have had access to the document. I'm not saying that the agencies talking to each other don't ask for guidance or something like that. But in this case, it's the only record that the appellants would have received of USCIS's determination. And so your position is that even though the waiver of inadmissibility is discretionary. Yes. By attacking it, you can attack what you think is a nondiscretionary decision that your clients are inadmissible. Well, I mean, I think because the way that the waiver, the way that the statute operates, right, and the scheme operates, it's not really even attacking the waiver. It's saying that the waiver wasn't necessary, and that's a threshold of termination. So, I mean, in terms of if you're asking, yes, the document is the waiver denial that it's part of, and that's the only way that they can bring it to USCIS's detention to rule on this legal issue. Okay, let me ask one more question. I don't want to monopolize this, but I'm not sure that I understood this to be your argument in your briefs. If the determination of inadmissibility flows from the consular officer's determination, consular officer says, I'm not giving you a visa because you're inadmissible. Well, ineligible. Excuse me? Ineligible. The consular officer can determine if you're ineligible. You're ineligible for admission. Then aren't, isn't this a backwards way of attacking a decision that you couldn't attack under the consular nonreviewable doctrine? No, because DHS is the agency that can issue a final determination of inadmissibility, not ineligibility for a visa application. And the consular officer is provided with statutory discretion to talk about ineligibility. And the thing with ineligibility is you generally can turn around and become eligible for most visas. Even if you're ineligible at the time, you can go and reapply. Here, and DOS interprets it as such, is once you have a finding, especially one where USCIS determines that you're inadmissible under this section, you're permanently ineligible for a visa. And this is, I think, one of the important distinctions here. But doesn't that mean that every decision by a consular officer that you're ineligible for a visa ends up being reviewable because DHS adopts it as long as you apply for a waiver of inadmissibility? No, most of them wouldn't be. Because one, just from the practicality of a waiver, is not even available for almost all grounds of ineligibility. It's only available for certain permanent inadmissibilities that there's an interest in a U.S. citizen in the United States, which meets some of the threshold issues that the courts over the years have addressed in terms of bringing such suits. So it really wouldn't cause a wide-scale review of consular officer decisions. What case would you direct us to that best supports what you're asking us to do on this front? This is a relatively novel theory, legal theory, which I haven't found this type of suit before. But the one thing that I did find interesting in my research for this was the Supreme Court case, the Gagiev v. Uhl, which is obviously it's an old case. But in that case, what went on and what Justice Holmes reviewed and the way he reviewed it was really what we're asking for, which is we're asking for an APA review of the record, which means we don't submit evidence. It's a deferential standard of review, and it's limited to the record. And the D.C. Circuit has opined and district courts in this circuit have followed that really when you bring an APA suit, we're really talking about a question of law. It's whether or not the agency acted within its authority, essentially. And so we're not saying, oh, we're going to introduce. Let's go back to Mandel and Bustamante. Sure. They both deal with denial of an ineligibility waiver. And in both of those cases, the court says the consular nonreviewable doctrine still applies. So I take it your argument is you're not really challenging the inadmissibility waiver. You're challenging this implicit finding of inadmissibility. Yes, and in both of those cases, the issue that would be the issue I'm talking about here was waived by the parties because they agreed that, one, in Mandel that he was just inadmissible under the statute of the time, and then in Fialo, the idea that Congress could legislate in these broad scopes and exclude certain classes of people. And then in Dinh, Dinh the record itself established that he had worked for the Taliban, which basically triggered the inadmissibility there. And so that would essentially say, and that's kind of, that would satisfy the review I'm even talking about under the HTA, honestly, the Dinh's evidence. Is it fair to say that your answer to Judge Bress's question is you don't have a case that actually deals with this situation? I mean, that's where I opened up. I said this is novel. It's a new theory. But I would say if you look at what Justice Holmes' opinion in Gejiov, it was a different statute. It was a habeas statute in effect at the time. But it was the same type of review of the legal standard versus all the facts that are in the record without taking additional facts and whether or not that meets the standard for inadmissibility, and there was exclusion there. And that's really all that the cause of action is asking for. It's really limited, and it's not asking for a specific review. I know you may want to save some time for rebuttal, but just so that I'm clear, what you're now arguing is about your APA claim. Yes, and that was what the motion to amend was about, was to bring this claim. You're not – these arguments don't go to the denial of the visa or the denial of the waiver of inadmissibility? No, no, no, they don't. They're really just this issue, and I understand. I mean, the visa denial, we did allege that we had established. You've raised that issue. I just wanted to make sure this is what you were talking about today. Yes, absolutely, Your Honor. Do you want to save the rest of your time for rebuttal? Yeah, I'll save the last one minute for rebuttal. Thank you very much. Let's hear from the government. Your Honor, may it please the Court, Aaron Goldsmith on behalf of the government. A fundamental problem with plaintiff's claims here are that the doctrine of constitutional non-reviewability bars foreign nationals from asserting any claim, statutory, constitutional, challenging their exclusion from the country. And as a result, the district court properly dismissed their claims as a matter of law. We have a little bit of a moving target in terms of this case. It was briefed in terms of the amended complaint as a challenge to the district court's decision to dismiss the amended complaint. If I understand opposing counsel correctly, they're no longer challenging that. They're challenging the denial. No, I think to be fair, he said he briefed the other stuff, but in oral argument today, he was focusing on the denial. Okay. And so that's why I wanted to be clear about that. Well, in that case, let me go back and talk about why the district court correctly dismissed the amended complaint. Because as a threshold matter, as this Court recognized in Cordenas and reiterated last year in Ketchatrya, in order to trigger even limited judicial review of the refusal of a visa, the refusal must implicate the constitutional rights of a U.S. citizen. And here, Hani and Gubran are foreign nationals. They're not married to U.S. citizens. The refusals do not implicate the rights of any U.S. citizens. And as a result, the plaintiffs cannot state any claim with respect to the visa refusals. It doesn't matter how they frame the issue. The sons cannot state a claim with respect to the visa refusals, a constitutional claim. Correct. Can the father? So that was unclear at the time that this issue was decided by the district court. But subsequently, over this past year, this court issued the Ketchatryad case, which is on point that says the relationship between a parent and an adult child is not sufficient to establish such a relationship for even the limited review set forth in Mandel. So, you know, we think Ketchatryad is dispositive of the claims in the amended complaint. And to the extent it was even an open question at the time the district court addressed this. And the district court basically said, I don't know. I'm going to assume that he has an issue, an interest, and we can take it from there. But under Ketchatryad, I think that is dispositive of the claims that they're making with respect to the visa denials. And there's no argument in the briefs as to why this case is distinguishable from Ketchatryad. You think you win even assuming there's a constitutional right that could be vindicated? Correct. Because the district court was very cautious in how they approached this case, and they kind of bent over backwards. They said basically even if there is an interest, you know, the claim still fails as a matter of law. You have not alleged facts showing bad faith, and we think that would be dispositive, even in the event that there was such a relationship. And so what we're dealing with here is an application of the Doctrine of Consonant Availability, and the question that plaintiffs seem to be focusing on more is whether or not they should have been given an opportunity to again amend their complaint. So that would be a second amended complaint. And the district court did not abuse its discretion in denying this request. And the reason is under this court's precedent in Allen, a plaintiff cannot circumvent the Doctrine of Consonant Availability by asserting a claim under the APA. And under Mandel, a plaintiff cannot circumvent the Doctrine of Consonant Availability by framing the case as a challenge to a waiver of inadmissibility. And I think the district court hit the nail on the head when they said that this case is indistinguishable from Mandel, and therefore another amendment would be futile. And I would just point out the precise procedural context of this case. There was an initial complaint that was dismissed. The judge explained why, in the district court's view, the initial complaint was defective, but provided an opportunity to amend. There was an amended complaint. That amended complaint has properly been dismissed. Then there was a second amended complaint. The district court didn't simply deny it. They held a hearing. They provided an opportunity to address Mandel, asked if there was any additional authority, and noted in the denial of the motion to amend that plaintiff's counsel had said there was no authority that they could point to. And so, you know, what we're left with is this challenge to this waiver of inadmissibility. And also ‑‑ I'm sorry. No, no, go ahead. Does it catch a try on holding up on the substantive, the lack of a substantive constitutional right, carry over to the APA claim, or in your view, no? Well, I mean, under Allen, there's no APA review of legal determinations. In Allen, there was a question as to someone was challenging a determination as to what was the legal effect of a conviction under a German court's conviction, whether it constituted a crime of moral turpitude. And there was also a question about a, for lack of a better word, a juvenile conviction where the person was referred to a diversionary program. And it was a pure legal determination. And this court in Allen said even in that context, it's not reviewable. So ‑‑ I want to ask you a question about catch a trying. Catch a trying dealt with the right of a son to have a parent admitted. Right. Did it foreclose a constitutional claim by a parent to have children admitted? So, I recognize there is that slight difference there. Well, it's not slight. I mean, there's lots of cases that talk about the fundamental rights of parents with respect to children. I'm not sure there's lots of cases that talk about the fundamental rights of children with respect to parents. Has this ever been applied, catch a trying ever been applied in the context of a parent seeking the admission of his children? Not by this court. There was a district court decision applying catch a trying in exactly that context that we cited. But I think the key part is the logic, the reasoning of catch a trying doesn't seem to draw any distinction. There's no basis under the language in catch a trying to draw this distinction. Again, we're talking about an adult child. It would be a different, kind of the analysis would have to be different if it was a minor child. But the reasoning of catch a trying would apply in both contexts and there's no argument that's been provided in the briefing. So, who then has the constitutional right to make these kinds of assertions? So, according to this court's precedent, it would be a spouse. Would it, would there be, might there be another relationship that would be sufficient? Under this court's reasonings, perhaps, but it wouldn't be between a parent and adult child. Now, there is an open question at the Supreme Court level and a number of justices have expressed the opinion that there is, even a spouse couldn't assert such an interest. If that's so, then why do we have this doctrine that says consular decisions are non-reviewable in the absence of bad faith if there's nobody who can actually attack them? Well, because if you, and you're asking this as a rhetorical question. I mean, I know you're familiar with what was said in Dinn and Justice Kennedy's concurrence where he just held out there might be limited review under that context. And then in Your Honor's decision in Cardenas, you said, well, yes. I guess I'm asking, so for purpose, for Ninth Circuit purposes, what's the controlling law with respect to the ability of someone to seek review of the denial of a visa? Well, I think it's both Cardenas and then Cachatrion. So, Cardenas says, we assume that under Justice Kennedy's concurrence that there are folks who can do so. Right, and it, like. Cachatrion says, but not the children of a parent. Right. So, what you're asking us to do is extend Cachatrion to a new situation and, right? Yes, I would, I'd have to say so. Okay, in this case, do we have to do so? You don't have to do so because they have failed to allege bad faith with particularity. They have, they have stated why there, there's, there's, there's, there's no question as to why the visas were denied. They've said it was bad faith, but they've, the statute contains C-1 for material misrepresentations, a factual predicate. And they've also alleged in paragraph one of their amended complaint that the, the consular officers went beyond that. They said, look, the, the material misrepresentations had to do with, with documents that you provided with respect to remission. So, there are facts in the record. And in light of that, they can't, they can't show with particularity bad faith. Well, if, if we knew for certain that the documents that the embassy believed were falsified were submitted directly by the doctors and the consular officer knew that, would that be enough to, to, to plausibly allege bad faith? That's a difficult question because it would be a very different case because the whole basis was that, that you as individuals made false representations and that the individuals, Hani and Gubran, were refused because they made false representations. But we know what false representation they made. This record doesn't tell us, does it? So... Nor, nor need the, nor need the consular officer say what it is. He just has to cite a statute that says... Right. You're inadmissible because you made false, false representations. Right, the State Department is somewhat reluctant to go into the details. No, no, I'm just saying in terms, in terms of the doctrine, they never get to know why if, if the, if the consular officer doesn't tell them. Right, it, there, there's, there, there is this allegation that it was for false documents. Right, but that's what they say. Right. It's not what the consular officer says. Right, no, we, we have not, we have not gone into any, any further detail. Okay, so I'm just trying to figure out how the, I'm interested how the doctrine, the bad faith part of the doctrine works. The consular officer says you're inadmissible because you've submitted false information. The applicant says can you tell me what it is? The consular officer says don't have to. I've cited a statute with a factual predicate and I've told you my factual predicate. How are they going to then establish bad faith? Well, that's, that's a difficult question that goes to the heart of the doctrine of consular non-reviewability. If you look at, this was almost part of the argument that the plaintiffs put forward and did. They said unless you give us more information, we can't challenge this. And you're not required to give them more. And, and, and, but, but didn't came out the way it did. It said this is all that's required. It's a very minimal, it's, it's very limited review. And our view is respectfully that's the end of the matter. That if, if the doctrine bars review of certain determinations, then those determinations are, are barred. And there's no, the district court didn't abuse its discretion in, in denying leave to again amend. Can I ask you a question on a different topic? Let's assume these two gentlemen presented themselves for admission at the border. Right. As, as your friend suggested. And they were denied admission because a consular officer had previously found them not eligible for admission. Could they then challenge the decision of, I assume it would be DHS not to admit them at the border? No, your honor. For the same reasons that this court set forth in Ketchatrion and, and, and, and the other cases cited when there, which is the exclusion of foreign nationals is not something that it, that is, who have not affected an entry, is not subject to judicial review. Now, if they were already in the country and they were put, you know, they'd been living here for a number of years, they were put in removal proceedings, and then they wanted to challenge it, that, that's a different situation. It's, they would be on a different plane. We're just talking about foreign nationals. You mean because then there would be an immigration court and it would come up that way? Correct. It would, there, and there, there, Congress has provided a mechanism for review. The reason I asked was I'm, I wasn't clear after listening to your, your friend, how somebody presenting himself at the border without a visa would, would be able to go to court to challenge the determination that he wasn't admissible. And the short answer is they couldn't. I mean, that, that, that's just how the. He might apply for asylum and then come up to us and argue that he should have gotten asylum or, or some, some other form of relief. Yeah, I, I mean, it's hard to see how that would play out. I, I, but the bottom line is the exclusion of foreign nationals is not something that, that is, that, that can be, who are, who have not affected an entry is not something that can be challenged in a federal court. And for that reason, the district court did not abuse its discretion in denying a second motion for a leave to amend. Thank you. Let's give counsel two minutes for rebuttal. Thank you, Your Honor. I guess I would, you know, with a, I would start with just responding to the question. I don't think that it's a, it's applicable here. I think that the case that differentiates is, you know, it can be differentiated. There's no need. And it doesn't really, it's my, my, the U.S. citizen appellant is an elderly father. There's, he discusses, you know, him and his wife, their medical issues and the need for their son to, their sons to help support them here. And as we brought up, not to really be forcing this issue, because I don't think it needs to, I don't really think it is determinative here. But, I mean, they also have, they also have what I would consider the partial, almost like a free exercise interest as well. Under the First Amendment, as they're Muslims, and there's this idea in Islam that children also take care of their parents. They're entitled to it. And that parents are entitled to take care of their children. And I think that is distinguishable from the claims about parental relationships in Qajartarian. And I think it kind of is an additional factual factor that probably should be considered in my client's cases if it was to be, if this case was to turn on that issue. So I would, I just, I don't think that it's, I think it's distinguishable in that regard. And then just for my last 30 seconds, with the coming to the border, if someone shows up at the border without a visa, they're just inadmissible for not having a visa. And there's no determination of anything else. So, like, 118289, I think, would cover that. I take it that's the point. If you show up with a visa, you get in. If you show up without a visa, you don't get in. I mean, you could... I mean, so it's the obtaining of the visa, which you agree is subject to the consular non-reviewability doctrine. That's the triggering point about whether you get in or don't get in. Well, no, I mean, no, because you, DHS has the final authority over it. And they also can, even if you have a visa, the statute says, regardless of your visa, you can still be denied as inadmissible. DHS has apprehended somebody at the border and said, you're showing up with a visa, but we still determine you're inadmissible. This is a case... No, it's not. This is a case where you're inadmissible because you have no valid visa. Correct? Well, no, they haven't, I mean, they haven't tried to enter, so they haven't been found inadmissible. Their inadmissibility determination was made... If they showed up. If they showed up, but they wouldn't because... And they would be because they didn't come with a visa. And they shouldn't try to enter without a visa. They should go through the proper process. But DHS can review that ultimate inadmissibility determination. Only DHS can actually determine inadmissibility. And I think that's the distinction. And, like, the Allen and the Dinh and the consular non-reviewability cases are always dealing with the ultimate discretionary determination. This is a separate dissemination about the way that the statute fits the facts in the record. And I think that it's distinguishable in that respect. And the APA is an appropriate form of review for just this one limited issue. And I think I've overrun my time, and I thank you very much. Let me see if my colleagues have other questions. If not, we thank both sides for their arguments and briefing in this case. And this case will be submitted.
judges: HURWITZ, BRESS, THOMAS